pitman; j.
| ¡This appeal arises from a judgment sustaining an exception of prescription/peremption in a legal malpractice case filed by Plaintiffs Lisa Cote’ and Mallory Fuller against Defendants Richard Hiller, Julio Rios, II, and Shuey Smith, LLC. After sustaining the exception, the trial court dismissed Plaintiffs’ suit against Defendants Richard Hiller and Shuey Smith, LLC.[1] Plaintiff Lisa Cote’ appeals that judgment. For the following reasons, the judgment of the trial court is affirmed.

FACTS

The underlying facts giving rise to this action for legal malpractice began in April 2007. Ms. Cote’ lived with her then minor daughter, Mallory Brooke Fuller, on Leo Avenue in the Broadmoor neighborhood of Shreveport. On the date of the incident, Leon Bell, an employee of the Shreveport Water Department, was working overtime notifying customers of water being turned off in the neighborhood. He clocked out at 8:30 p.m. At approximately 1:30 a.m., Mr. Bell entered Cote’s home, held her at knifepoint until her daughter began screaming and then fled the residence. Mr. Bell was arrested and charged with aggravated burglary and second degree kidnapping. He pled guilty to second degree kidnapping and was sentenced to serve nine years at hard labor.
Defendants filed suit on behalf of Plaintiffs against the City of Shreveport (“the City”) on November 20, 2009, claiming that Ms. Cote’ suffered serious psychological damage as a result of Mr. Bell’s actions. Ms. Cote’ alleged that Mr. Bell had come to her house the year before to 1 ¿‘check her water” and that she allowed him into her home. According to Ms. Cote’, Mr. Bell repeatedly returned to her home, but she did not allow him in on those subsequent visits. Ms. Cote’ claimed she informed the City in June 2006 of these incidents with Mr. Bell; however, the City had no record of any complaints filed by her. Ms. Cote’ contended that the City should be held vicariously liable to her, individually and on behalf of her minor child, because the damages she suffered were a result of Mr. Bell acting within the course and scope of his employment with the City.
The City filed a motion for summary judgment claiming the employee’s burglary and assault of Ms. Cote’ did not occur within the course and scope of his employment;' and, thus, it was not vicariously liable for its employee’s criminal acts. Defendants advised her that the City’s .motion for summary judgment was a sound legal argument and that her case was a difficult one to prove with respect to liability. Ms. Cote’ allegedly began finding fault with many of the actions taken by Defendants regarding discovery and never hesitated to contact them with ideas of her own to pursue. When Defendants provided her with an affidavit they intended to present in opposition to the City’s motion for summary judgment, they received an email from her, dated October 14, 2010, outlining the problems she found with the affidavit, including a note indicating that she was shocked when she read the affidavit because the information was “not only inaccurate, but did not reflect at all the consistency of previous correspondence from you.” Ms. Cote’ indicated that she was disappointed with Defendants because she expected them to be sticklers for detail.
[■¡Despite Defendants’ efforts, the trial court granted the City’s motion for summary judgment and dismissed Plaintiffs’ suit against it. Plaintiffs appealed that *611 decision to this court, and oral argument was requested by the City. The oral argument was scheduled for August 8, 2011. Defendants had a conflict on the day of oral argument and informed Ms. Cote’ that they would not be attending and were waiving appearance. Ms. Cote’ suggested they ask for a continuance and was informed by Defendants that continuances of oral argument are not allowed at the court of appeal. Ms. Cote’ personally attended the oral argument and believed the City’s attorney recited facts which were inaccurate and, further, that she was not adequately represented. This court rendered judgment affirming the trial court. See Cote’ v. City of Shreveport, 46,571 (La.App.2d Cir.9/21/11), 73 So.3d 435.
On September 30, 2011, Ms. Cote’ sent Mr. Hiller an email indicating that she had received a copy of the appellate opinion the day before and was shocked at the result. She emailed him again on October 3, 2011, with questions regarding the opinion, including question number 7 — “Why didn’t I receive the outcome in time to potentially file a motion for reconsideration?” On October 4, 2011, Mr. Hiller replied:
As for question number 7, I mailed a copy of the decision as soon as I received it. Due to the fact that it was a unanimous decision, I don’t see anything that can be gained by filing either a motion for reconsideration or a writ of certiorari to the La. Supreme Court. Though my office has put in a great deal of time and money into your case, I believe, unfortunately, that there’s nothing more I can do. This is certainly not the outcome that we expected to have, but I can’t deny the reality of the situation. Please give me a call at your convenience, and I’ll be happy to discuss your case further.”
|4No writs were taken to the Louisiana Supreme Court on this court’s opinion rendered September 21,2011.
On October 12, 2012,[2] Ms. Cote’ and Ms. Fuller, in proper person, filed the instant suit against Defendants, alleging acts of legal malpractice, including failure to .obtain the City’s telephone records evidencing the complaints she made to it, failure to correct the introduction of incorrect facts and evidence by the City, failing to introduce evidence showing whether the employee was on duty at the time of the incident and various other acts and omissions. Plaintiffs claimed that Defendants’ acts prevented them from meeting the filing deadline for seeking a review of the appellate court’s decision by the Louisiana Supreme Court.
Defendants filed a peremptory exception of peremption and/or prescription, arguing that Plaintiffs had alleged the negligent handling of the underlying tort suit against the City by Defendants’ failing to perform certain discovery, failing to properly respond to the City’s motion for summary judgment and failure to properly handle the matter while on appeal. Defendants asserted that Plaintiffs’ claims had prescribed or had been perempted since they had failed to file suit within one year of discovering facts that would have put them on notice of a possible claim against Defendants.
The exception was heard on March 31, 2014. Although Defendants had attempted to serve Ms. Cote’ many times, she avoided service. The trial Rcourt found that Ms. Cote’ had deliberately avoided *612 service and held the hearing on the exception in her absence. After consideration of the testimony of Mr. Hiller, the documentary evidence introduced (including the emails mentioned earlier) and the briefs, the trial court concluded that Plaintiffs’ petition “filed on October 19, 2012,”[3] had prescribed. Judgment was signed that day granting Defendants’ exception of prescription/peremption and dismissing the suit with prejudice.
Plaintiffs appealed the judgment of the trial court. Although Ms. Cote’ filed a brief, her daughter, Ms. Fuller, did not.[4]

DISCUSSION

Plaintiff claims that her case for legal malpractice arises from a continuous tort in the handling of her underlying suit. She argues that the final act of malpractice that “drove a death knell into appellant’s right for a fair opportunity to be heard in a court of law and what led to the ultimate injury occurred on October 21, 2011.” She contends that the first error occurred when the motion for summary judgment was argued in the trial court and Defendants informed her they would file an appeal. The second error allegedly occurred when Defendants waived appearance at the appellate oral argument. The third error allegedly occurred when Defendants failed to timely seek writs with the Louisiana Supreme Court.
| fiPlaintiff claims that this court’s judgment was rendered on September 21, 2011, and Defendants did not advise, provide counsel or discuss with her the option to file a writ with the Louisiana Supreme Court. She further claims that Mr. Hiller informed her that her “case did not merit further actions.” She stated that he also did not discuss “exercising options on my behalf,” causing her to miss the 30-day deadline for filing writs. She further argues that Defendants did not provide her with a copy of her file in a timely manner in order that she could seek new counsel within the 30-day deadline period.
For these reasons, Plaintiff asserts that the ultimate and final injury sustained by her occurred on October 21, 2011, the date the 30-day deadline to file writs with the Louisiana Supreme Court expired. She contends that, because she filed her petition for legal malpractice on October 18, 2012,[5] it was timely and had not prescribed.
Defendants point out that, normally, a defendant bears the burden of proof in a peremptory exception of prescription or peremption; however, if the plaintiff’s action has prescribed on the face of the petition, the burden shifts to the plaintiff to show that the action has not, in fact, prescribed. Defendants argue that, under La. R.S. 9:5605, a cause of action for legal malpractice prescribes within one year from the date of the alleged act, omission or neglect, or within one year from the date that the alleged act, omission or neglect is discovered or should have been discovered.
| .^Defendants assert that Plaintiff was aware of the complaints she had against their law firm throughout the history of *613 the underlying suit. They argue she was aware that the City’s motion for summary judgment had been granted and that Mr. Hiller waived his appearance at oral argument in this court. Defendants further argue that Plaintiff attended oral argument and had personal knowledge that Mr. Hiller had not participated. Defendants state that, “On August 21, 2011 (sic), this Court issued an opinion affirming the summary judgment in favor of the City of Shreveport.”[6] Defendants argue that it was not until more than one year later, on “October 19, 2012”[7] that Plaintiff filed her legal malpractice law suit.
Defendants argue that the important date in the time line of events is October 12, 2011, because it was on that date that Plaintiff emailed Mr. Hiller indicating she had received a copy of the appellate court’s opinion and complaining about the lack of representation at oral argument. They contend that this is the date Plaintiff knew or had sufficient knowledge to put her on notice of a potential legal malpractice claim. They further contend that prescription ran on that claim one year later — October 12, 2012-but make the erroneous argument that Plaintiff did not file her petition until October 19, 2012. As previously noted herein, Plaintiffs legal malpractice action was actually filed on October 12, 2012.
Defendants further argue that Plaintiff is incorrect in her assumption that prescription ran one year from the deadline for filing writs to the | ^Louisiana Supreme Court, her rationale being that this was the date when there was no further chance to redress the wrongs committed by the trial court in the underlying litigation. Defendants claim that jurisprudence makes it clear that the knowledge of facts sufficient to put the prospective plaintiff on notice of a possible claim is the relevant starting point for the running of prescription, irrespective of hopes of a favorable appeal. Defendants contend that prescription begins to run in a legal malpractice claim at the earliest alleged action or omission because all acts or omissions constitute one basis of malpractice, the overall allegedly negligent representation. Based on these arguments, Defendants claim that prescription began to run on Plaintiff’s malpractice action long before the deadline to apply for writs to the Louisiana Supreme Court.
La. R.S. 9:5605 concerns limitations of actions in legal malpractice and states in pertinent part as follows:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three yeárs from the date of the alleged act, omission, or neglect. *614 B.... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of 'Civil Code Article 3458 and, in|9accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
In Jenkins v. Starns, 11-1170 (La.1/24/12), 85 So.3d 612, the supreme court examined La. R.S. 95605 and stated that', when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. The supreme court stated that La. R.S. 9:5605 clearly provides three peremptive periods: (1) a one-year peremptive period from the date of the act, neglect or omission; (2) a one-year’peremptive period from the date of discovering the act, neglect or omission; (3) and a three-year peremptive period from the date of the act, neglect or omission when the malpractice is discovered after the date of the act, neglect or omission. As peremptive periods, they could not be interrupted or suspended. In Stams, the supreme court found that the continuous representation rule could not apply to suspend the commencement of these peremptive periods, as it would render La. R.S. 9:5605(B) meaningless. The plaintiffs claim was found to have per-empted when she failed to file her suit within the one-year peremptive period found in the statute.
Peremption differs from prescription in several respects. Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation; peremption, however, extinguishes or destroys the right. Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. | inIt may not be interrupted or suspended; nor is there provision for its renunciation. Exceptions such as contra non valentem are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted or suspended; and contra non valentem applies an exception to the statutory prescription period where, in fact and for good cause, a plaintiff is unable to exercise his cause of action when it accrues. Starns, supra, citing, Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291.
In the context of a legal malpractice claim, the date of discovery from which prescription or peremption begins to run is the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict and the relationship between them sufficient to indicate to a reasonable person that he is the victim of a tort and to state a cause of action against the defendant; in other words, the date of discovery is the date the negligence was discovered or should have been discovered by a reasonable person in the plaintiffs position. Gibsland Bank & Trust Co. v. Kitchens, Benton, Kitchens & Black (APLC), 47,763 (La.App.2d Cir.5/15/13), 114 So.3d 529, writ denied, 13-1643 (La.11/8/13), 125 So.3d 452. See also, Williams v. CDY Dev. Corp., 48,359 (La.App.2d Cir.8/7/13), 124 So.3d 1, writ denied, 13-2489 (La.1/17/14), 130 So.3d 947.
The party raising an exception of prescription or peremption ordinarily bears the burden of proof at the trial of a peremptory exception; however, when prescription is evident from the face of the pleadings, the plaintiff bears the burden of showing the action has not prescribed. InConstructive knowledge for purposes of *615 prescription is whatever notice is enough to excite attention and put an injured party on guard and call for inquiry. The ultimate issue is the reasonableness of the tort victim’s action or inaction, in light of his education, intelligence and the nature of the defendant’s conduct. CDY Dev. Corp., supra.
In Taussig v. Leithead, 96-960 (La.App. 3d Cir.2/19/97), 689 So.2d 680, the court found that a client’s legal malpractice action, claiming that the attorney committed 20 negligent acts during the handling of the client’s divorce and community property partition, presented a single cause of action with one prescriptive period. The court found that the underlying factual basis was the same for each separate act and the allegedly negligent acts all occurred during a continuous period of representation.
If evidence is introduced at the hearing on the peremptory exception of prescription, the district court’s findings of fact are reviewed under the manifest error-clearly wrong standard of review; if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rando v. Anco Insulations Inc., 08-1163 (La.5/22/09), 16 So.3d 1065.
In this legal malpractice claim, Plaintiffs claims are governed by the per-emptive periods found in La. R.S. 9:5605. These periods are not subject to interruption or suspension based on the claim of continuous tort. The record shows that the date of discovery of the alleged negligence can be attributed to Plaintiff as far back as Defendants’ alleged mishandling of | ^Plaintiffs response to the City’s motion for summary judgment in 2010. Plaintiffs petition for legal malpractice contains specific allegations of Defendants’ alleged acts with which she found fault, including lack of proper discovery and failure to object to the introduction of certain evidence in the trial court.
The acts upon which Plaintiff bases her petition for legal malpractice began to occur in 2010. Her petition complains of acts or omissions by Defendants occurring in August 2011. Since she was so dissatisfied with the representation provided to her as early as 2010 and continuing through August 2011, those dates are ones from which her claim perempted. A reasonable person in Plaintiffs position had, or should have had, either actual or constructive knowledge of the damage, the delict and the relationship between them sufficient to indicate that she is the victim of a tort and to state a cause of action against the defendant. Plaintiff did not file her petition until October 12, 2012, almost two years after the first acts she alleged constituted her claim for legal malpractice. For those reasons, we find no manifest error in the ruling of the trial court and agree that Plaintiffs claim's have perempted and were properly dismissed. Plaintiffs assignments of error are without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Defendants Richard E. Hiller and Shuey Smith, LLC, and against Plaintiff Lisa Cote’ is affirmed. Costs of this appeal are assessed to Plaintiff Lisa Cote’.
AFFIRMED.

. Julio Rios, II, was not mentioned in the trial court’s judgment.

. Throughout the record, the filing date of Plaintiffs’ legal malpractice suit is erroneously stated by the parties and the trial court as October 19, 2012. In actuality, the legal malpractice petition was filed on October 12, 2012; and, on its face, is stamped with that date.

. See Footnote 2.

. Under U.R.C.A. Rule 2-8.6, where an appellant in a civil appeal does not file his brief within the time prescribed by Rule 2-12.7 or any extension granted, a notice shall be transmitted to him that the appeal shall be dismissed 30 days thereafter unless a brief is filed in the meantime. When the appellant does not file a brief within 30 days of the notice, the appeal shall be dismissed as abandoned. Ms. Fuller never filed a brief, even after the notice was sent; therefore, her appeal is dismissed as abandoned.

.See Footnote 2.

. The appellate judgment was actually rendered on September 21, 2011.

. See Footnote 2.